Jerry L. Steering (SBN 122509)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com

Attorney for Plaintiff Thomas Perez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS ANTHONY PEREZ,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY OF FONTANA, DAVID JANUSZ, JEREMY HALE, RONALD KOVAL, ROBERT MILLER, JOANNA PINA, and DOES 1 through 10, INCLUSIVE,<br><br>    Defendants. | Case No.:<br><br>COMPLAINT FOR VIOLATIONS OF FEDERAL CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983; UNREASONABLE SEIZURE OF PERSON (U.S. CONST. AMEND IV); UNREASONABLE USE OF FORCE (U.S. CONST. AMEND IV); UNREASONABLE SEARCH AND SEIZURE OF PROPERTY (U.S. CONST. AMEND IV); DENIAL OF SUBSTANTIVE DUE PROCESS OF LAW (U.S. CONST. AMEND XIV); RETALIATION FOR PROTECTED SPEECH (U.S. CONST. AMEND I); CALIFORNIA STATE LAW CLAIMS FOR VIOLATION OF BANE ACT (CAL. CIV. CODE § 52.1); FALSE ARREST, BATTERY, INTENTIONAL INLICTION OF EMOTIONAL DISTRESS<br><br>JURY TRIAL DEMANDED |

**COMES NOW** plaintiff THOMAS PEREZ and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the City of Fontana, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.      As Plaintiff's claims brought under California state law arise out of the same transactions and occurrences and out of a common nucleus of operative facts as the Plaintiff's federal questions claims, this court may exercise supplemental jurisdiction over the Plaintiff's California state law claims pursuant to 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

4.      Plaintiff timely filed his Claims For Damages against the City of Fontana on or about February 7, 2019, pursuant to the California Tort Claims Act, Cal. Gov't. Code § 900 et seq., and said claim was denied by defendant City of Fontana on or about February 25, 2019, less than six months prior to the filing of this instant action.

## GENERAL ALLEGATIONS

5.      Plaintiff THOMAS ANTHONY PEREZ, hereinafter referred to as "PEREZ" or "Plaintiff," is a natural person who, at all times complained of in this action, resided in the State of California, in the City of Fontana.

6.      Defendant City of Fontana, hereinafter also referred to as "City of Fontana" or "CITY," is a political subdivision of the State of California and is a municipal entity located within the territorial jurisdiction of this Honorable Court.

7.      Defendant Ronald KOVAL, hereinafter referred to as "KOVAL," is, and was at all times complained of herein, employed as a full-time sworn Police Officer with the Fontana CITY Police Department (hereinafter "Fontana CITY Police Department" and/or "FPD"), with a rank of Lieutenant. At all times complained of herein, KOVAL was acting as an individual person under the color of state law, pursuant to his status as a Lieutenant Police Officer, and was acting in the course of and within the scope of his employment with defendant City of Fontana.

8.      Defendant David Janusz, hereinafter referred to as "JANUSZ," is, and was at all times complained of herein, employed as a full-time sworn Police Officer with the Fontana CITY Police Department, with a rank of Corporal. At all times complained of herein, JANUSZ was acting as an individual person under the color of state law, pursuant to his status as a Police Officer, and was acting in

the course of and within the scope of his employment with defendant City of Fontana.

9.     Defendant Robert MILLER, hereinafter referred to as "MILLER," is, and was at all times complained of herein, employed as a full-time sworn Police Officer with the Fontana CITY Police Department, with a rank of Corporal. At all times complained of herein, MILLER was acting as an individual person under the color of state law, pursuant to his status as a Police Officer, and was acting in the course of and within the scope of his employment with defendant City of Fontana.

10.    Defendant Jeremy HALE, hereinafter referred to as "HALE," is, and was at all times complained of herein, employed as a full-time sworn Police Officer with the Fontana CITY Police Department. At all times complained of herein, HALE was acting as an individual person under the color of state law, pursuant to his status as a Police Officer, and was acting in the course of and within the scope of his employment with defendant City of Fontana.

11.    Defendant Joanna PINA, hereinafter referred to as "PINA," is, and was at all times complained of herein, employed as a full-time sworn Police Officer with the Fontana CITY Police Department. At all times complained of herein, PINA was acting as an individual person under the color of state law,

pursuant to her status as a Police Officer, and was acting in the course of and within the scope of her employment with defendant City of Fontana.

12. Defendants DOES 1 through 6, inclusive, are sworn peace officers and/or Officers and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or Social Services Practitioners and/or some other public officer, public official or employee of defendant City of Fontana, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to Plaintiff for the acts complained of in this action, whose identities are unknown to Plaintiff.

13. At all times complained of herein, DOES 1 through 6, inclusive, were acting as individual persons under color of state law, pursuant to their authority as sworn peace officers and/or Officers and/or Special Officers and/or police officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or Social Services Practitioners and/or dispatchers, employed by defendant City of Fontana, and were acting in the course of and within the scope of their employment with defendant City of Fontana.

14. Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or Supervisors and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or

policy making and/or final policy making officials, employed by the City of Fontana, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by Plaintiff in this action, such as via supervisory liability (i.e. failure to properly supervise, improperly directing subordinate officers, approving actions of subordinate officers), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the City of Fontana for: 1) for unlawfully taking and detaining the children of persons by using false statements of material facts[1] with deliberate indifference and malice; 2) for unlawfully seizing persons; 3) for unlawful searching and seizing persons and their personalty / property; 4) for falsely arresting and falsely imprisoning persons; 5) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other Officers, social service practitioners and supervisory personnel from civil, administrative and criminal liability; 6) for

---

[1] And omissions of material facts.

COMPLAINT FOR DAMAGES

interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for defaming peace officers to their employers with false allegations of criminal conduct with spite, hatred and ill-will; 8) for covering-up unlawful and tortious conduct by City of Fontana personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the Plaintiff in this action.

15.    At all times complained of herein, DOES 7 through 10, inclusive, were acting were acting as individual persons acting under the color of state law, pursuant to their authority as Officers and/or Supervisory Officers, Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by the City of Fontana, and/or some other public official(s) with City of Fontana, and were acting in the course of and within the scope of their employment with defendant City of Fontana.

16.    Moreover, at all times complained of herein, defendants DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the City of Fontana, for, inter alia: 1) for unlawfully taking and detaining the children of persons by using false statements of material fact with deliberate indifference

and malice; 2) for unlawfully seizing persons; 3) for unlawful searching and seizing persons and their personalty / property; 4) for falsely arresting and falsely imprisoning persons; 5) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other Officers, social service practitioners and supervisory personnel from civil, administrative and criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for defaming peace officers to their employers with false allegations of criminal conduct with spite, hatred and ill-will; 8) for covering-up unlawful and tortious conduct by City of Fontana personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

17.    In addition to the above and foregoing, defendants DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the Plaintiff THOMAS PEREZ of his federal Constitutional and statutory rights, as complained of in this action, and acted in joint and concerted action to so deprive Plaintiff THOMAS PEREZ of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in

violation of United States (Constitutional and statutory) law.

18.     Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the Plaintiff THOMAS PEREZ's federal and state constitutional and statutory rights, as complained of herein.

19.     Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend this complaint to add and to show the actual names of said DOE defendants, when ascertained by Plaintiff.

## INCIDENT THAT GAVE RISE TO LITIGATION

20.     The events described below took place between August 7, 2018 and August 13, 2018. All events described below occurred chronologically, unless otherwise specified.

21.     At the time of the events described below, Plaintiff THOMAS PEREZ owned a home in Fontana, California, where he lived with his father, Thomas Perez Senior (hereinafter "Plaintiff's Father").

22.     At the time of the events described below, Plaintiff PEREZ was in the process of renovating and repairing his home, in anticipation of selling the property and/or moving.

23.     At the time of the events described below, Plaintiff PEREZ was in

the process of separating from his wife.

24.     On August 7, 2018, Plaintiff PEREZ's Father went out to retrieve the mail, but never returned.

25.     Unbeknownst to Plaintiff PEREZ, his father had decided to visit overnight with a female friend, and then travel to visit his daughter in Northern California. Plaintiff's father left without telling Plaintiff PEREZ of his plans.

26.     Plaintiff soon noticed that his father was absent from the home. Plaintiff believed his father was out wandering the streets of Fontana. Because of Plaintiff's father's advanced age, limited English capabilities, and physical/mental frailty, Plaintiff was concerned for his father's safety and/or well-being.

27.     Plaintiff called the FPD's non-emergency line and spoke with Lt. Carlos Granillo regarding Plaintiff's father's absence. Plaintiff asked to speak with Lt. Granillo because Plaintiff had corresponded with Granillo numerous times over the years while reporting incidents in the community, i.e., while acting as a neighborhood watch. Plaintiff had a good working relationship with Lt. Granillo, and they were on a "first name basis."

28.     Plaintiff informed Lt. Granillo that his father had not returned home, and that his father was likely out wandering the streets of Fontana. Lt. Granillo told Plaintiff to wait and call back in a few hours.

29.     On August 8, 2018, Plaintiff PEREZ noticed that his father had not

returned home.

30.     Plaintiff again called the FPD non-emergency line regarding his father's absence. This time, however, Lt. Granillo was unavailable and/or unable to respond. Instead, Plaintiff's inquiry was directed to Defendant Lt. Ronald KOVAL.

31.     Plaintiff had a negative relationship with Defendant KOVAL, due to their previous interactions on a separate matter. Based on his prior interactions with Plaintiff, it was apparent that Lt. KOVAL personally disliked Plaintiff.

32.     After several non-emergency calls to the FPD, an Officer was sent to Plaintiff's home to complete a "missing person report form." The first FPD Officer to respond to Plaintiff's home was Defendant Joanna PINA.

33.     When Officer PINA arrived at Plaintiff's home, she approached the front doorway. Plaintiff opened his front door and met Officer PINA.

34.     Immediately after Plaintiff opened the front door, Officer PINA barged into Plaintiff's home, forcing her way past Plaintiff, over the threshold of the doorway and into the home's interior. At that time, Officer PINA did not have a warrant. Nor had Plaintiff consented to Officer PINA's entry into his home.

35.     Upon contacting Plaintiff, Officer PINA immediately displayed a hostile demeanor.

36.     Plaintiff objected / protested as Officer PINA barged her way into his

home. Officer PINA appeared to become increasingly agitated as a result of Plaintiff's protesting of Officer PINA's actions.

37.     Officer PINA told Plaintiff PEREZ that her Lieutenant had directed her to respond to Plaintiff's house. The FPD Lieutenant to whom Officer PINA referred was Lieutenant Koval.

38.     Officer PINA said that it looked like a struggle had taken place in Plaintiff's home. Plaintiff PEREZ immediately disputed Officer PINA's statement, as there was no evidence of a struggle. Plaintiff's house was messy because he was renovating / repairing it, but the mess did not remotely resemble evidence of a struggle. No reasonable person could have believed that the mess from Plaintiff's renovation / repairing activities resembled evidence of a struggle.

39.     At that time, from Officer PINA's perspective, Plaintiff did not have any visible injuries.

40.     At that time, from Officer PINA's perspective, there was no visible blood or traces of blood.

41.     At that time, from Officer PINA's perspective, there was no evidence indicating that a crime of any sort had taken place in Plaintiff's home.

42.     Nevertheless, Officer PINA decided to treat Plaintiff as a criminal suspect and summoned FPD homicide detectives.

43.     Soon, Defendant FPD Officer Robert MILLER arrived at Plaintiff's

home and entered without a warrant, consent, or exigent circumstances.

44.     Within minutes of his arrival at Plaintiff's home, Officer MILLER told Plaintiff that he would have to go down to the FPD station for an interrogation.

45.     Plaintiff immediately protested Officer MILLER's direction to Plaintiff. Plaintiff expressed that he did not want to go to the FPD station, and that he did not want to submit to an interrogation.

46.     Officer MILLER told Plaintiff that he did not have a choice, and that he would be required to submit to an interrogation at the FPD station.

47.     Officer MILLER directed Plaintiff to get into the back of an FPD vehicle, which was parked outside. Plaintiff complied, under protest.

48.     Officer MILLER drove Plaintiff to the FPD station.

49.     Upon reaching the FPD station, Plaintiff PEREZ was placed in an interrogation room. Soon, Defendants David JANUSZ and Jeremy HALE approached Plaintiff.

50.     Thereafter, for an extended period of time, Defendants JANUSZ and HALE subjected Plaintiff to an intense interrogation and accused Plaintiff of murdering his father.

51.     Plaintiff told Defendants that he wanted to call a lawyer. Defendants refused to let Plaintiff call a lawyer.

52.     Plaintiff asked for his medications, which were at his home. Plaintiff was prescribed medications for, among other things, depression, stress, asthma, and high blood pressure. Plaintiff explained to defendants that he felt unwell, and that he needed his medications to feel better. Defendants refused to stop the interrogation, and instead gave only empty assurances that Officers would retrieve the medications as some point in the future. Plaintiff did not receive his medications for several hours.

53.     At some point while Plaintiff was in custody, Defendants procured a warrant to search Plaintiff's home and to seize various items therein. The warrant was procured without probable cause, based on Defendants' misrepresentations and exaggerations of the aforementioned facts. Defendants represented to the court that facts existed suggesting that Plaintiff had murdered his father, and that Plaintiff's home would contain evidence of the alleged murder.

54.     Defendants executed the warrant at Plaintiff's home. After entering Plaintiff's home, Defendants seized numerous items of property belonging to Plaintiff, including Plaintiff's laptop computers, tablet computers, cellular telephones, hard drives, and tools. Defendants even seized Plaintiff's dog, "Margosha"—a healthy, friendly Labrador retriever.

55.     Defendants also towed and impounded Plaintiff's vehicles—a 2018 Ford F-150, and a 2017 Ford Fusion.

56.     Meanwhile, back at the FPD station, Defendants continued interrogating Plaintiff PEREZ. Plaintiff repeatedly expressed his desire to leave the interrogation and go home. Defendants refused to let Plaintiff leave the interrogation.

57.     At some point during the interrogation, Defendant JANUSZ told Plaintiff that "your father is dead," that they found his body, and that "he has a toe tag on him." Defendant JANUSZ was lying.

58.     Defendants accused Plaintiff of murdering his father, and told Plaintiff that he would "never see the light of day again"—implying that Plaintiff would be convicted of murdering his father.

59.     During the interrogation sequences, Plaintiff PEREZ repeatedly, specifically, and consistently denied each of Defendants' murder accusations. This is because Plaintiff PEREZ had not murdered his father. In fact, Plaintiff's father was not even dead.

60.     During the interrogation, Plaintiff PEREZ gave Defendants numerous leads which would have quickly led them to discover that Plaintiff's father was alive and well. Plaintiff told Defendants that his father may have taken the "Metro" to visit his friend in Los Angeles. Plaintiff also told Officers that his father may have gone to visit his daughter (i.e., Plaintiff's sister) in Northern California. Plaintiff provided Defendants with contact information for his sister.

At that time, Defendants failed to follow up on those leads, instead focusing on building a murder case against Plaintiff.

61.    At some point during the interrogation, Defendants JANUSZ and HALES drove Plaintiff to an undeveloped dirt lot at the end of a remote road near the edge of Fontana. Defendants ordered Plaintiff to exit the vehicle, but Plaintiff refused, fearing that Defendants would either beat or kill him at that remote location. Defendants continued to ask Plaintiff questions about the alleged murder of his father. After some time, Defendants drove Plaintiff back to the FPD station.

62.    Later in the day, Defendants again drove Plaintiff to the same remote dirt lot at the edge of Fontana. There, Defendants continued interrogating Plaintiff about the alleged murder of Plaintiff's father. Plaintiff continued to deny murdering his father. After some time, Defendants drove Plaintiff back to the FPD station.

63.    After returning to the FPD station, Defendants continued to interrogate Plaintiff. Defendants became increasingly hostile and accusatory toward Plaintiff.

64.    Plaintiff, accepting Defendants' representations that his father had been murdered and was dead, became increasingly despondent.

65.    Plaintiff was also alarmed that Defendants were accusing him of murdering his father. Plaintiff was terrified at Defendants' suggestion that he

would go to jail for the rest of his life, because under the circumstances, it seemed like a real possibility.

66.     After some time, Defendants brought Plaintiff's dog, Margosha, into Plaintiff's view. Defendants callously told Plaintiff to "say goodbye" to Margosha, then told Plaintiff "okay your dog's gone now, forget about it." Defendants then sent Margosha off to be euthanized. Defendants accomplished this by erroneously classifying Margosha as a "stray" dog.[2]

67.     Plaintiff valued the company and companionship of his dog, Margosha, and was deeply hurt when Defendants told Plaintiff to "say goodbye" before sending Margosha off to be euthanized.

68.     Because of Defendants' actions in telling Plaintiff that his father had been murdered, accusing Plaintiff of committing that murder, brutally interrogating Plaintiff for hours, seizing Plaintiff's possessions, and sending Plaintiff's dog off to be euthanized, Plaintiff suffered extreme emotional distress.

69.     Defendants were also aware that Plaintiff suffered from several ailments that would compound emotional distress, including depression, stress, asthma, and high blood pressure. Plaintiff's distress was compounded by his

_____

[2] Luckily, Plaintiff had Margosha implanted with a microchip identification. For this reason, she was returned to pound, and was ultimately was not euthanized.

COMPLAINT FOR DAMAGES

depression, stress disorder, asthma, and high blood pressure.

70.     Defendants were also aware of the fact that Plaintiff was in the process of separating from his wife. Plaintiff's distress was compounded by the fact that he was in the process of separating from his wife.

71.     As a result of the extreme emotional distress that Plaintiff was suffering because of Defendants' actions, Plaintiff attempted suicide by hanging during a break in the interrogation.

72.     Defendants then handcuffed Plaintiff PEREZ and transported him to Arrowhead Regional Medical Center (ARMC).

73.     The handcuffs were applied to Plaintiff in an excessively tight manner, such that they caused him to suffer extreme pain and discomfort.

74.     Plaintiff asked Defendants to loosen the handcuffs. However, Defendants refused to loosen the handcuffs.

75.     On August 9, 2018, Plaintiff was admitted to the psychiatric unit at ARMC, where he remained until August 13, 2018 on a "hold" pursuant to Cal. Welf. & Inst. Code section 5150.

76.     On August 9, 2018, shortly after being admitted to ARMC, Plaintiff received a call from his father, Thomas Perez, Senior. Plaintiff was surprised and overjoyed to hear from his father, as Plaintiff had been under the impression that his father had been murdered and was dead.

77.     Unbeknownst to Plaintiff, at some point after his attempted suicide, Defendants had contacted Plaintiff's sister, and had verified that Plaintiff's father was en route to Northern California to visit Plaintiff's sister. Defendants also learned that Plaintiff's father had spent the previous nights with a female companion in the Los Angeles area. Defendants learned that Plaintiff's father had taken the "Metro" to Los Angeles, just as Plaintiff suggested.

78.     Defendants learned that Plaintiff's father had a flight booked on August 9, 2018 from the Los Angeles International Airport ("LAX") to Oakland, California. Defendants, with the assistance of the Airport Police, took Plaintiff's father into custody at LAX.

79.     Plaintiff was released from ARMC on August 13, 2018.

80.     Because Plaintiff's father was not dead, and no murder had taken place, Plaintiff was not charged with any crime.

81.     Plaintiff later picked up his dog, Margosha, from the Riverside County Department of Animal Services. Plaintiff soon noticed that Margosha couldn't walk. Margosha had an injury to her crucial ligament, and injury for which she needed "TPLO surgery" to her right hind limb. Plaintiff has presently paid approximately $12,000 toward Margosha's medical needs as a result of the aforementioned incident. Plaintiff expects that Margosha will have additional medical bills in the future as a result of her injuries.

82.     Plaintiff later retrieved most of his property from Defendants, including his cars, his computers, and his cellular telephones. However, numerous items were damaged and rendered unusable.

83.     Moreover, Defendants did not return several items of Plaintiff's property, and have refused to do so.

**FIRST CAUSE OF ACTION**
**UNREASONABLE SEIZURE OF PERSON**
**UNDER THE FOURTH AMENDMENT**
**[42 U.S.C. § 1983]**
**(By Plaintiff THOMAS PEREZ Against All Defendants)**

84.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 83, inclusive, above, as if set forth in full herein.

85.     On August 8, 2018, Plaintiff PEREZ called the FPD non-emergency line and informed them that his father had not returned home.

86.     Defendants KOVAL, PINA, MILLER, and DOES 1 through 10, inclusive, immediately decided to treat Plaintiff's report as a homicide investigation.

87.     There was no sign of struggle in Plaintiff's home. Plaintiff's house was messy because he was renovating / repairing it, but the mess did not remotely resemble evidence of a struggle. No reasonable person could have believed that the mess from Plaintiff's renovation / repairing activities resembled evidence of a

struggle. Plaintiff explained this to Defendants at the scene of his arrest.

88.     At the time of Plaintiff's arrest, Plaintiff did not have any visible injuries.

89.     At the time of Plaintiff's arrest, there was no visible blood or traces of blood in Plaintiff's home.

90.     At the time of Plaintiff's arrest, there was no evidence indicating that a crime of any sort had taken place in Plaintiff's home.

91.     Thus, based on the facts Defendants confronted, they lacked probable cause to suspect Plaintiff PEREZ of murder or any other crime. The only fact they had was that Plaintiff had reported his father missing.

92.     Nevertheless, Defendants took Plaintiff in to custody against his will and transported him to the FPD station. Defendants told Plaintiff he had no choice but to accompany Defendants to the FPD station and submit to an interrogation.

93.     Thus, Plaintiff was arrested when Defendants transported him to the FPD station for an interrogation.

94.     At the FPD station, Defendants, including Defendants JANUSZ and HALE, repeatedly refused to let Plaintiff leave the interrogation.

95.     During the interrogation sequences, Plaintiff PEREZ repeatedly, specifically, and consistently denied each of Defendants' murder accusations. This is because Plaintiff PEREZ had not murdered his father. In fact, Plaintiff's father

COMPLAINT FOR DAMAGES

21

was not even dead.

96.     During the interrogation, Plaintiff PEREZ gave Defendants numerous leads which would have quickly led them to discover that Plaintiff's father was alive and well. Plaintiff told Defendants that his father may have taken the "Metro" to visit his friend in Los Angeles. Plaintiff also told Officers that his father may have gone to visit his daughter (i.e., Plaintiff's sister) in Northern California. Plaintiff provided Defendants with contact information for his sister. Yet Defendants failed to follow up on those leads, and otherwise ignored them, instead focusing on building a murder case against Plaintiff.

97.     Thus, Defendants unreasonably refused to release Plaintiff from arrest.

98.     The arrest and interrogation continued, against Plaintiff's will, and he was ultimately transferred to the psychiatric unit at ARMC, where he remained until August 13, 2018.

99.     Accordingly, the arrest of Plaintiff THOMAS PEREZ by Defendants constituted an unreasonable seizure in violation of PEREZ's right to be free from unreasonable seizures of person under the Fourth Amendment to the United States Constitution.

100.   As a result of the above-mentioned unreasonable seizures caused by Defendants, Plaintiff THOMAS PEREZ suffered substantial damages, including,

but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

101.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

## SECOND CAUSE OF ACTION
**USE OF UNREASONABLE / EXCESSIVE FORCE ON PERSON
UNDER THE FOURTH AMENDMENT
[42 U.S.C. § 1983]
(By Plaintiff THOMAS PEREZ Against All Defendants)**

102.   Plaintiff hereby re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 101, inclusive, above, as if set forth in full herein.

103.   As shown above, on August 9, 2018, Plaintiff THOMAS PEREZ was handcuffed by Defendants.

104.   Said handcuffing was deliberately done in a very tight, painful and cruel and sadistic manner with the very purpose of causing Plaintiff THOMAS

PEREZ excruciating pain and agony.

105.   Plaintiff asked Defendants to loosen the handcuffs.

106.   Defendants refused to loosen the handcuffs.

107.   Accordingly, said excessive handcuffing of Plaintiff THOMAS PEREZ was done in violation of his right to be free from the use of unreasonable force upon their persons under the Fourth Amendment to the United States Constitution.

108.   As a result of the above-mentioned unreasonable / excessive use of force caused by Defendants, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

109.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

COMPLAINT FOR DAMAGES

24

## THIRD CAUSE OF ACTION
### UNREASONABLE SEARCH AND SEIZURE OF REAL PROPERTY UNDER THE FOURTH AMENDMENT
### [42 U.S.C. § 1983]
### (By Plaintiff THOMAS PEREZ Against All Defendants)

110.   Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 109, inclusive, above, as if set forth in full herein.

111.   When Officer PINA arrived at Plaintiff's home, she approached the front doorway. Plaintiff opened his front door and met Officer PINA.

112.   Immediately after Plaintiff opened the front door, Officer PINA barged into Plaintiff's home, forcing her way past Plaintiff, over the threshold of the doorway and into the home's interior.

113.   At that time, Officer PINA lacked a warrant, exigent circumstances, or probable cause.

114.   Plaintiff did not consent to Officer PINA's entry into his home.

115.   Thus, Defendant PINA's entry into Plaintiff's home was unreasonable.

116.   Upon contacting Plaintiff, Officer PINA immediately displayed a hostile demeanor.

117.   Moreover, as set forth above, no reasonable person could have believed that the mess from Plaintiff's renovation / repairing activities resembled

evidence of a struggle, Plaintiff did not have any visible injuries, and there was no visible blood or traces of blood.

118.   When Defendant Officer MILLER arrived, his knowledge was limited to the observations of Defendant PINA, who herself had unlawfully entered Plaintiff's home. MILLER entered Plaintiff's house without a warrant, consent, or probable cause to believe that any crime had been committed.

119.   Later, when Defendants procured a warrant to search Plaintiff's home and to seize various items therein, they did so based on Defendants' misrepresentations and exaggerations of the aforementioned facts for the purpose of causing the Court to believe that Plaintiff had murdered his father.

120.   Thus, the warrant was not based upon a valid showing of probable cause, the warrant was invalid, and any search pursuant to the warrant was unreasonable.

121.   Nevertheless, Defendants executed the warrant at Plaintiff's home. Defendants entered Plaintiff's home, where they seized numerous items of property.

122.   Defendants thereafter refused to allow Plaintiff to return to his home until August 13, 2018.

123.   Accordingly, Defendants entries on to Plaintiff's real property between August 8, 2018 and August 13, 2018 without a warrant, consent, exigent

circumstances, or probable cause, constituted an unreasonable search of Plaintiff's real property in violation of Plaintiff's Fourth Amendment rights.

124.   Moreover, Defendants' refusal to allow Plaintiff to return to his property, without a valid warrant, probable cause, or consent, constituted an unreasonable seizure of Plaintiff's real property, in violation of Plaintiff's Fourth Amendment rights.

125.   As a result of Defendants' unreasonable search / seizure of Plaintiff's real property, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

126.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

//

## FOURTH CAUSE OF ACTION
### DENIAL OF SUBSTANTIVE DUE PROCESS–
### OUTRAGEOUS GOVERNMENT MISCONDUCT
### UNDER THE FOURTEENTH AMENDMENT
### [42 U.S.C. § 1983]
### (By Plaintiff THOMAS PEREZ Against All Defendants)

127.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 126, inclusive, as though set forth in full herein.

128.   As shown above, Defendants arrested Plaintiff for murdering his father, without probable cause to believe that Plaintiff had murdered his father, or even probable cause to believe that anyone was dead.

129.   Despite a wholesale lack of evidence, Defendants chose to treat Plaintiff as a criminal suspect.

130.   Defendants transported Plaintiff to the FPD station and proceeded to interrogate him vigorously for an entire day, without allowing him to consult with an attorney, without allowing him to take his medications, and without allowing him to sleep.

131.   Defendants told Plaintiff that his father was dead, that they found his body, and that he had a "toe tag" on him. Defendants intentionally lied to Plaintiff about the death of his father.

132.   Defendants accused Plaintiff of murdering his father, and told Plaintiff that he would "never see the light of day again"—implying that Plaintiff

would be jailed for the rest of his life.

133.   Plaintiff, accepting Defendants' representations that his father had been murdered and was dead, became increasingly despondent. Defendants were aware of this, but were deliberately indifferent.

134.   Plaintiff was also alarmed that Defendants were accusing him of murdering his father. Plaintiff was terrified at Defendants' suggestion that he would go to jail for the rest of his life, because under the circumstances, it seemed like a real possibility. Defendants were aware of this, but were deliberately indifferent.

135.   Defendants brought Plaintiff's dog, Margosha, into Plaintiff's view. Defendants callously told Plaintiff to "say goodbye" to Margosha, then told Plaintiff "okay your dog's gone now, forget about it." Defendants then sent Margosha off to be euthanized. Defendants accomplished this by intentionally classifying Margosha as a "stray" dog. Defendants were aware that Margosha was not a stray dog, but were deliberately indifferent.

136.   Plaintiff valued the company and companionship of his dog, Margosha, and was deeply hurt when Defendants told Plaintiff to "say goodbye" before sending Margosha off to be euthanized. Defendants were aware of this, but were deliberately indifferent.

137.   Because of Defendants' actions in telling Plaintiff that his father had

COMPLAINT FOR DAMAGES

been murdered, accusing Plaintiff of committing that murder, brutally interrogating Plaintiff for hours, seizing Plaintiff's possessions, and sending Plaintiff's dog off to be euthanized, Plaintiff suffered extreme emotional distress. Defendants were aware of this, but were deliberately indifferent.

138.   Defendants were also aware that Plaintiff suffered from several ailments that would compound emotional distress, including depression, stress, asthma, and high blood pressure. Plaintiff's distress was compounded by his depression, stress disorder, asthma, and high blood pressure. Defendants were aware of this, but were deliberately indifferent.

139.   Defendants were also aware of the fact that Plaintiff was in the process of separating from his wife. Plaintiff's distress was compounded by the fact that he was in the process of separating from his wife. Defendants were aware of this, but were deliberately indifferent.

140.   As a result of the extreme emotional distress that Plaintiff was suffering because of Defendants' actions, Plaintiff attempted suicide by hanging during a break in the interrogation.

141.   Defendants at all times knew that there was no evidence that Plaintiff's father was dead, let alone evidence that Plaintiff killed him.

142.   Defendants at all times knew that Plaintiff's dog was not a "stray," and otherwise was not lawfully subject to euthanization.

143.    Defendants were deliberately indifferent to the emotional anguish and destruction their actions were causing to Plaintiff, who was at all times an innocent man.

144.    Defendants' conduct, as set forth above, would shock the conscience of any reasonable person.

145.    Thus, Defendants' conduct, as set forth above, constituted outrageous government misconduct, in violation of Plaintiff's Fourteenth Amendment right to substantive due process of law.

146.    As a result of Defendants' outrageous government misconduct, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

147.    Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

**FIFTH CAUSE OF ACTION**
**UNREASONABLE SEIZURE OF PROPERTY**
**UNDER THE FOURTH AMENDMENT**
**[42 U.S.C. § 1983]**
**(By Plaintiff THOMAS PEREZ Against All Defendants)**

148.   Plaintiff hereby re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 147, inclusive, above, as though set forth in full herein.

149.   As shown above, Defendants entered Plaintiff's home and seized numerous items of property belonging to Plaintiff, including Plaintiff's laptop computers, tablet computers, cellular telephones, hard drives, and tools.

150.   Defendants also seized Plaintiff's dog, "Margosha"—a healthy, friendly Labrador retriever.

151.   Defendants also towed and impounded Plaintiff's vehicles—a 2018 Ford F-150, and a 2017 Ford Fusion.

152.   As shown above, Defendants were unlawfully present in Plaintiff's home, and at all time lacked probable cause to seize Plaintiff's property.

153.   Moreover, as shown above, the warrant on which Defendants relied was procured by making material misrepresentations and exaggerations, all to obscure the fact that no probable cause existed to suspect evidence of crime in Plaintiff's home. Thus, the warrant was invalid.

154.   Moreover, numerous items of Plaintiff's property were broken or

damaged upon their return. Several items have not been returned.

155.   Thus, when Defendants took possession of Plaintiff's personal property, they did so unreasonably, and unlawfully, in violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures of personal property.

156.   As a result of Defendants' unreasonable seizures of Plaintiff's personal property, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

157.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

//

//

## SIXTH CAUSE OF ACTION
### UNREASONABLE SEARCH OF PROPERTY
### UNDER THE FOURTH AMENDMENT
### [42 U.S.C. § 1983]
### (By Plaintiff THOMAS PEREZ Against All Defendants)

158.   Plaintiff hereby re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 157, inclusive, above, as though set forth in full herein.

159.   On August 8, 2018 Defendants went into / accessed Plaintiff THOMAS PEREZ's computers, telephones, and hard drives without consent, exigent circumstances or a valid warrant.

160.   Plaintiff had a reasonable expectation of privacy in his electronic devices, which contained numerous items of private information.

161.   Defendants' actions in accessing Plaintiff's electronic devices constituted a search of Plaintiff's personal property.

162.   Defendants were generally prohibited from accessing Plaintiff's electronic devices under Cal. Penal Code § 502 (Unauthorized access to computers, computer systems and computer data), the Electronic Communications Privacy Act (18 U.S.C. § 2510 *et seq.*), and the California Electronic Privacy Communications Act (Cal Penal Code § 1546 *et seq.*).

163.   Thus, Defendants' actions in accessing Plaintiff's electronic devices constituted a violation of Plaintiff's Fourth Amendment right to be free from

unreasonable invasions / searches / seizures of Plaintiff's electronic communications.

164.   As a result of Defendants' unreasonable searches of Plaintiff's electronic devices, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

165.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

## SEVENTH CAUSE OF ACTION
## RETALIATION FOR PROTECTED SPEECH
## UNDER THE FIRST AMENDMENT
## [42 U.S.C. § 1983]
## (By Plaintiff THOMAS PEREZ Against All Defendants)

166.   Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 165, inclusive, as if set forth in full herein.

167.   During the unreasonable searches and seizures at the hands of the above-named Defendants, Plaintiff THOMAS PEREZ verbally protested Defendants' actions.

168.   Moreover, Plaintiff repeatedly invoked his Constitutional rights in refusing to consent to Defendants' warrantless and obnoxious entry on to his property.

169.   In retaliation for Plaintiff's protests, Defendants treated Plaintiff as a murder suspect and falsely arrested Plaintiff on bogus charges of murdering his father.

170.   Furthermore, at the time and date of Plaintiff THOMAS PEREZ's arrests in this matter, the policy, custom, usage and practice of the Fontana CITY Police Department was to arrest persons who exercise their First Amendment rights by verbally protesting police action.

171.   Plaintiff's protected speech and invocation of Constitutional rights was a substantial motivating factor in Defendants' decision to treat Plaintiff as a murder suspect, and to arrest him without probable cause for the murder of his father.

172.   Defendants' actions in treating Plaintiff as a murder suspect, and arresting him without probable cause, would chill a person of ordinary firmness from exercising his/her First Amendment rights.

173.   Thus, Defendants' actions constituted a violation of Plaintiff's First Amendment right to be free from retaliation for protected speech.

174.   As a result of Defendants' retaliation for Plaintiff's protected speech, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

175.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

//

//

//

//

//

## **EIGHTH CAUSE OF ACTION**
### **VIOLATION OF THE BANE ACT**
### **UNDER CAL. CIVIL CODE § 52.1 AND CALIFORNIA STATE LAW**
### **(By Plaintiff and THOMAS PEREZ Against All Defendants)**

176.   Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 175, inclusive, as if set forth in full herein.

177.   As shown above, Defendants arrested and used excessive force upon Plaintiff THOMAS PEREZ as retaliation for his verbally protesting Defendants' ulawful actions.

178.   Defendants' use of threats and physical force against Plaintiff THOMAS PEREZ was intentional, and was meant to coerce the Plaintiff to refrain from exercise his Constitutional rights.

179.   Moreover, as shown above, said Defendants intentionally used unreasonable force upon the Plaintiff THOMAS PEREZ, which is in itself a violation of Section 52.1.

180.   Thus, Defendants, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise or enjoyment by Plaintiff of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Civil Code § 52.1.

181.   Defendants are liable to Plaintiff for said violations of their

Constitutional rights, pursuant to California Civil Code §52.1, and California Government Code §§ 815.2(a), 815.6, 820, 820.8.

182.   As a result of Defendants' actions set forth above, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

183.   In addition, as a result of the actions of said Defendants in violation of the Plaintiff's rights under Cal. Civil Code § 52.1, the Plaintiff is entitled to an award of treble compensatory damages against all Defendants, and each of them in this action.

184.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

//

//

## NINTH CAUSE OF ACTION
## FALSE ARREST / FALSE IMPRISONMENT
## UNDER CALIFORNIA STATE LAW
### (By Plaintiff THOMAS PEREZ Against All Defendants)

185.  Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 184, inclusive, above, as if set forth in full herein.

186.  As complained of above, Plaintiff THOMAS PEREZ was unlawfully seized and arrested by Defendants on August 8, 2018.

187.  As complained of above, said Defendants, had: (1) neither a warrant nor probable cause to believe that Plaintiff THOMAS PEREZ had committed a crime; (2) Plaintiff was actually harmed by said conduct of Defendants; and (3) the conduct of Defendants was a substantial factor in causing Plaintiff THOMAS PEREZ's harm.

188.  Defendants are liable to Plaintiff THOMAS PEREZ for their false arrests / false imprisonments pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.4 and 820.8.

189.   As a result of Defendants' actions set forth above, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

190.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

## TENTH CAUSE OF ACTION
### BATTERY
### UNDER CAL. CIVIL CODE § 52.1 AND CALIFORNIA STATE LAW
### (By Plaintiff and THOMAS PEREZ Against All Defendants)

191.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 190, inclusive, above, as if set forth in full herein.

192.   As complained of above, Defendants used unreasonable force upon Plaintiff PEREZ when they unlawfully arrested him on August 8, 2018, then applied excessively tight handcuffs on August 9, 2018.

193.   Defendants' touching of Plaintiff was harmful and offensive to Plaintiff, and would be harmful and offensive to a reasonable person.

194.   Plaintiff was actually harmed by Defendants' harmful and offensive contact.

195.   The conduct of Defendants was a substantial factor in causing

COMPLAINT FOR DAMAGES

Plaintiff THOMAS PEREZ's harm.

196.   Defendants are liable to Plaintiff THOMAS PEREZ for their false arrests / false imprisonments pursuant to Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.4 and 820.8.

197.   As a result of Defendants' actions set forth above, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

198.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

//

//

//

//

//

//

## ELEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER CALIFORNIA STATE LAW
### (By Plaintiff THOMAS PEREZ Against All Defendants)

199.   Plaintiff hereby re-alleges and re-incorporates by reference the allegations set forth in paragraphs 1 through 198, inclusive, as if set forth in full herein.

200.   During the interrogation on August 8, 2018, Defendants falsely told Plaintiff that "your father is dead," that they found his body, and that "he has a toe tag on him."

201.   Defendants falsely accused Plaintiff of murdering his father, and told Plaintiff that he would "never see the light of day again"—implying that Plaintiff would be convicted of murdering his father.

202.   Defendants continued to interrogate Plaintiff in an increasingly hostile and accusatory manner.

203.   Plaintiff, accepting Defendants' false representations that his father had been murdered and was dead, became increasingly despondent.

204.   Plaintiff was also alarmed that Defendants were accusing him of murdering his father. Plaintiff was terrified at Defendants' suggestion that he would go to jail for the rest of his life, because under the circumstances, it seemed like a real possibility.

205.   Defendants brought Plaintiff's dog, Margosha, into Plaintiff's view. Defendants callously told Plaintiff to "say goodbye" to Margosha, then told

COMPLAINT FOR DAMAGES

Plaintiff "okay your dog's gone now, forget about it." Defendants then sent

Margosha off to be euthanized. Defendants accomplished this by intentionally

misclassifying Margosha as a "stray" dog.

206.   Plaintiff valued the company and companionship of his dog,

Margosha, and was deeply hurt when Defendants told Plaintiff to "say goodbye"

before sending Margosha off to be euthanized.

207.   Because of Defendants' actions in telling Plaintiff that his father had

been murdered, accusing Plaintiff of committing that murder, brutally

interrogating Plaintiff for hours, seizing Plaintiff's possessions, and sending

Plaintiff's dog off to be euthanized, Plaintiff suffered extreme emotional distress.

208.   Defendants were also aware that Plaintiff suffered from several

ailments that would compound emotional distress, including depression, stress,

asthma, and high blood pressure. Plaintiff's distress was compounded by his

depression, stress disorder, asthma, and high blood pressure.

209.   Defendants were also aware of the fact that Plaintiff was in the

process of separating from his wife. Plaintiff's distress was compounded by the

fact that he was in the process of separating from his wife.

210.   As a result of the extreme emotional distress that Plaintiff was

suffering because of Defendants' actions, Plaintiff attempted suicide by hanging

during a break in the interrogation.

211.   Defendants actions, as set forth above, constituted outrageous conduct, and would be offensive to any reasonable member of a civilized society.

212.   Defendants knew and/or should have known that Plaintiff THOMAS PEREZ was uniquely susceptible to suffering severe emotional distress from Defendants' outrageous actions as complained of above and herein.

213.   Defendants, and each of them, are liable to THOMAS PEREZ pursuant to Cal. Government Code §§ 815.2(a), 815.6, 820, 820.8 and otherwise pursuant to the common-law.

214.   As a result of Defendants' actions set forth above, Plaintiff THOMAS PEREZ suffered substantial damages, including, but not limited to, lost wages / profits and other income, damage to Plaintiff's real and personal property, medical and psychological bills, emotional / mental distress, and other special damages; all in an amount to be shown at trial, in excess of $10,000,000.00.

215.   Said actions and omissions of the Defendants, above-referenced, were committed maliciously and in reckless disregard of THOMAS PEREZ's Constitutional rights, sufficient for an award of punitive damages against said Defendants, save Defendant CITY, in an amount to be shown at trial, in excess of $10,000,000.00.

**WHEREFORE**, plaintiff prays for judgment as follows:

a)   For a judgment against all defendants for compensatory damages in

an amount in excess of $10,000,000.00; trebled to $30,000,000.00[3];

b)     For a judgment against all defendants, save defendant CITY for punitive damages in an amount in excess of $10,000,000.00;

c)     For an award of reasonable attorney's fees and costs;

d)     For a trial by jury; and

e)     For such other and further relief as this honorable court deems just and equitable.

_____

JERRY L. STEERING
Attorney for THOMAS PEREZ

_____

[3] Pursuant to Plaintiff's claim under Section 52.1.